[Civ. No. 4037. First Appellate District, Division Two.—November 5,
1921.]

A. B. NEWELL, Appellant, v. REDONDO WATER COM-
PANY (a Corporation), Respondent.

[1] EASEMENT — CONVEYANCE OF REAL PROPERTY — COVENANT TO
FURNISH WATER.—A transfer of real property containing a cove-
nant to furnish water free to the land conveyed creates an
easement in favor of the grantee upon the land and upon the
water system of the grantor.

[2] PUBLIC UTILITIES — WATERS AND WATER RIGHTS — EASEMENT IN
FAVOR OF PRIVATE PARTY—EXCEPTION TO RULE.—The rule that a
public utility which has dedicated its entire plant to the service
of the public cannot create an easement in favor of a private
party is inapplicable to a land-selling corporation which furnishes
water to some of its grantees as an incident to its main business,
reserving a portion of its supply for private use or sale.

[3] DEED—PREVIOUS CONTRACT TO CONVEY—CONDITIONS—REFERENCE TO
CONTRACT FOR DETERMINATION.—While it is true that when a con-
tract to convey is followed by a conveyance the terms of the
contract are merged into the conveyance and the latter becomes
the measure of the rights of the parties, yet, when the conveyance
makes special reference to the conditions of the contract and re-
cites that it is made for the purpose of fulfilling the same, it is
proper to examine the contract to see what conditions are re-
ferred to.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

Porter & Sutton for Appellant.

Gibson, Dunn & Crutcher and Henry F. Prince for
Respondent.

NOURSE, J.—Plaintiff sued in equity to have it adjudged that he was entitled to receive from the defendant, a public service corporation, water for domestic purposes, free of charge, to be used on two certain lots of land in the city of Redondo Beach. The complaint and the amendment thereto alleges that on August 5, 1887, three sisters by the name of Dominguez, owners of a tract of one thousand acres, situated in what is now Redondo Beach, entered into an agreement with two parties by the name of Silent and McFarland to sell the land to them for the purpose of subdividing, platting, and offering the land for sale to the public. One of the conditions of the agreement was that six acres in one-acre lots should be reserved to the owners which "shall be entitled to water for domestic purposes (not to exceed one residence for each acre lot) free of charge from any water works which may be erected upon said premises." This agreement was duly recorded and thereafter, on September 29, 1890, the said owners conveyed the land to the Redondo Beach Company, the assignees of Silent and McFarland "in fulfillment of an agreement entered into on the 5th day of August, 1887, . . . whereby the parties of the first part to said agreement agreed to convey *upon certain conditions*" the land described.

Following this deed and on June 10, 1891, the Redondo Beach Company conveyed back to one of the original owners and her husband two separate tracts which she had selected under her reservation in the contract. This deed expressly recited that it included "two water rights for domestic purposes free of charge." Similar deeds were made to the other sisters or their representatives—one in November, 1890, and the other in July, 1892. Plaintiff is the successor in interest of Susanna D. Dominguez de del Amo under the deed of June 10, 1891, above mentioned.

The parties stipulated that the Redondo Beach Company entered into possession of the premises under its deed of 1890, recorded a map of the town site it had laid out, sold lots therein, and commenced the development of a water supply with which it furnished water to the lot owners. In February, 1899, the company sold its property to the Redondo Improvement Company, which in September, 1908, conveyed to the defendant Redondo Water Company. The

complaint alleges, and it is not denied, that shortly after
the conveyance of June, 1891, the defendant's predecessor,
the Redondo Beach Company, installed two service pipes,
one running to each of the two tracts conveyed by said
deed. The parties stipulated that from that date until
November, 1915, said company and its successors continu-
ously furnished water free of charge to said premises; that
the use of such water by plaintiff and his predecessors was
open, notorious, peaceable, adverse, and under claim of
right; and that in November, 1915, the defendant shut off
the water from said premises and refused to furnish any
water for use on the premises unless plaintiff paid therefor
the rates established by the state Railroad Commission.

There is no controversy as to the facts related above, but
the defendant, by its answer and by objections made at the
trial, put in issue the relevancy and legal effect of the
agreement of 1887 and the subsequent reconveyances to the
original owners. It was also alleged in the answer that
prior to the date of the deed to plaintiff's predecessor the
defendant was a public utility corporation and had dedi-
cated all its water system to the public. The real issue
between the parties is whether plaintiff has obtained the
right to have water delivered to him free of charge or
whether he must pay the rates fixed by the Railroad Com-
mission to be charged the customers of the defendant com-
pany.

The case was tried on an agreed statement of facts and
upon additional evidence offered by plaintiff in support
of the amendment to his complaint. Judgment went for
defendant and plaintiff appeals.

The trial court found that prior to the year 1891 the
Redondo Beach Company constructed a system of water-
works in the town site (now city) of Redondo Beach and
that all its property used in connection with the water sup-
ply was devoted and dedicated to public use in the supply-
ing of water to the inhabitants of said town site as a public
utility. This finding is not supported by the evidence,
which is that during all this time the company also fur-
nished water to appellant and his predecessors free of
charge and also to the hotel, flower garden, railway station,
and offices owned by itself and successor. By the agreed
statement of facts, it is admitted this water was so fur-

nished from the same system and it necessarily follows that the company had not dedicated all the water to the public use. In fact, the evidence does not show when any of the system was dedicated to public use. Such dedication is not to be presumed. (*Allen* v. *Railroad Commission,* 179 Cal. 68, 85 [3 A. L. R. 249, 175 Pac. 466].) It is clear that no dedication was made until after the deed to the company in 1890 which referred to the agreement of 1887. By this agreement the owners retained the right to select six lots with perpetual water rights after the company platted the entire tract. Any dedication to the public was made subject to the terms of that contract. In recognition of this obligation and to make certain its right to continue the private distribution of water, the company, in dedicating its town site, expressly reserved the right to lay water-pipes in the public streets—a reservation which would have been unnecessary if the entire water system had been dedicated to public use. That the owner of a water supply can dedicate part of its plant to public use and reserve the remainder for private purposes or private sale has been settled by the decisions. (*Del Mar Water etc. Co.* v. *Eshleman,* 167 Cal. 666, 681 [140 Pac. 591, 948]; *Allen* v. *Railroad Commission,* 179 Cal. 68, 82 [3 A. L. R. 249, 175 Pac. 466].)

Appellant attacks the finding that he is not the owner of any easement or right to be supplied with water as not supported by the evidence. The finding covers the main issues raised under appellant's theory of the case. It is alleged in the complaint and not denied that in 1891 the Redondo Beach Company conveyed the lots of land to appellant's predecessor and that shortly after said deed was made the grantor installed two service pipes, one running to each of said lots, through which water was furnished to appellant and his predecessors free of charge for more than twenty-four years. The parties stipulated that throughout that period this water was furnished appellant and his predecessors free of charge and that it was so used on the premises openly, notoriously, peaceably and uninterruptedly. It was also stipulated that the principal business of the Redondo Beach Company was "subdividing, improving and selling" its lands in the town site. [1] Now, a transfer of real property containing a cove-

nant to furnish water free to the land conveyed creates an easement in favor of the grantee upon the land and upon the water system of the grantor. (*Stanislaus Water Co. v. Bachman*, 152 Cal. 716, 724 [15 L. R. A. (N. S.) 359, 93 Pac. 858]; *Palermo L. & W. Co. v. Railroad Commission*, 173 Cal. 380, 386 [160 Pac. 228]; *Allen v. Railroad Commission*, 179 Cal. 68, 73 [3 A. L. R. 249, 175 Pac. 466].) Unless, therefore, the Redondo Beach Company was prohibited by law from making the grant it would necessarily follow that an easement was created which has come down to appellant.

[2] In this connection respondent argues that the Redondo Beach Company could not create an easement because it was a public utility corporation and, as such, was required to serve all consumers of water on equal terms. Putting it in another way, the argument is that, if the corporation at the time of entering into the contract was a public service corporation, the contract was subject to modification at the instance of the Railroad Commission. (*Southern Pac. Co. v. Spring Valley Water Co.*, 173 Cal. 291, 298 [L. R. A. 1917E, 680, 159 Pac. 865]; *Limoneira Co. v. Railroad Commission*, 174 Cal. 232, 238 [162 Pac. 1033].) This proposition is sound when applied to a public utility which has dedicated its entire plant to the service of the public. (*Allen v. Railroad Commission*, 179 Cal. 68, 80 [3 A. L. R. 249, 175 Pac. 466].) But the rule has never been applied to a land-selling corporation which furnishes water to some of its grantees as an incident to its main business, reserving a portion of its supply for private use or sale. It is undisputed that when the deed was made the company was using a portion of its water supply upon its own property and had reserved an easement in the public streets for that purpose. There was nothing to prevent it from making a valid contract to divert a portion of such water to private sale or to free distribution. Thus the contract was good when made and the easement attached as of that date.

[3] The only other point requiring consideration is the question of the admissibility of the evidence of the contract of 1887 and the subsequent deeds to the original owners. This evidence was offered for the purpose of showing the ambiguity in the deed of 1890, which recited that it was

made in fulfillment of the contract of 1887 by which the grantors agreed to convey ''upon certain conditions.'' It is true that when a contract to convey is followed by a conveyance the terms of the contract are merged into the conveyance and the latter becomes the measure of the rights of the parties. (*Bryan* v. *Swain,* 56 Cal. 616, 617.) But when the conveyance makes special reference to the conditions of the contract and recites that it is made for the purpose of fulfilling the same, it is proper to examine the contract to see what conditions are referred to. But in any event, the contract gave the right to select the lots *after* the land had been deeded to the company and platted for sale. This contract was valid when made because the company was not then a public utility. The subsequent deeds to the original owners were merely evidence of the company's recognition of its contractual obligation. The original contract was admissible to show the intention of the parties.

The evidence relating to the execution of the deeds to the sisters of appellant's predecessor was of importance for the purpose of showing that the construction placed upon the deed of 1890 by respondent was the same as that contended for by appellant and acquiesced in for more than twenty-four years. This evidence might properly have been received.

Judgment reversed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 3, 1922.

All the Justices concurred, except Lawlor, J., and Shurtleff, J., who were absent.