[Civ. No. 3794. Third Appellate District.—November 18, 1932.]

WATERFORD IRRIGATION DISTRICT (a Public Corporation), Appellant, v. MODESTO IRRIGATION DISTRICT, etc., et al., Respondents.

Dennett & Zion, Walter C. Fox, Homer Hankins and Chickering & Gregory for Appellant.

L. J. Maddux, P. H. Griffin and Griffin & Boone for Respondents.

PULLEN, P. J.—This is an appeal from a judgment in favor of defendants and respondents, Modesto Irrigation District and Turlock Irrigation District, and against plaintiff and appellant Waterford Irrigation District. The action is one for damages for breach of contract arising from the failure of the defendants to pay the rental for the privilege of using the water right hereinafter referred to.

The Sierra and San Francisco Power Company was the owner of a water right to 66 second-feet of the flow of the Tuolumne River, known as the La Grange ditch water right, it being subject only to an obligation of the power company to divert up to 6 second-feet for a prior use for certain mining and municipal purposes. The power company was also the owner of the La Grange dam and power-house, and the system of diversion through the La Grange ditch was so constructed that the 66 second-feet referred to could be diverted above the dam and carried to a point above the

power-house, where it could be dropped through the power-house for the purpose of generating electricity, or carried on to the districts for irrigation purposes.

On January 14, 1919, the Sierra Company, for the sum of $170,000 entered into a written contract with the Waterford Irrigation District to sell to the district for irrigation purposes only the use of this 66 second-feet for a period of six months of each year subject to the prior right to 6 second-feet above referred to, the district being given the privilege at its option of determining within certain limits when the use of such water would begin, and upon thirty days' notice to the Sierra Company the district could turn back to the power company not less than 30 second-feet for a period of not less than thirty days at the beginning or the ending of the six-month period. For the rental of the water so returned, the power company agreed to pay a rate computed on the basis of 1/6th of $5\frac{1}{2}$ per cent of $170,000 for 60 second-feet per month.

Pursuant to this agreement, the Waterford District took over the water rights during the irrigation season of 1919. It elected to turn back the entire 66 second-feet during a thirty-day period and the district was paid therefor by the power company at the stipulated rate.

The Sierra Company, as a public utility, could not sell, lease or otherwise dispose of its operative property without the consent of the Railroad Commission, and on October 22, 1919, the Commission approved the terms of sale as set forth in the agreement, but it was not until January 24, 1920, that a deed granting the rights covered in the agreement was finally executed and placed of record.

In 1921 the Modesto and Turlock districts acquired from the Sierra Company all its interest in and to its power-house, dams, machinery, water rights, etc., including its interest in the La Grange ditch right of 66 second-feet, subject to the rights of the Waterford District. One of the considerations for this agreement was the express stipulation by the Modesto and Turlock districts that they assume any and all obligations which the Sierra Company might have to the Waterford District.

In 1927 the Waterford District gave notice to the defendant districts, as successors of the Sierra Company, that it elected to turn back the water for a certain thirty-day

period, but the defendant districts failed to use any part of the water so turned back, and it was allowed to waste. After demand and refusal had been made, plaintiff instituted this action for the recovery of $1558.33 as the stipulated compensation to be recovered for water turned back for such a period. The defendant districts claimed they were not obliged to pay for water turned back which they did not use, and upon the trial of the issues so raised the trial court adopted that as the contract of the parties, and gave judgment accordingly. The correctness of that interpretation is now before this court.

■ This controversy arises by reason of a difference in the wording of certain portions of the agreement and deed referred to above, and for a clearer understanding of these differences those portions of the two instruments relied upon by the respective parties are set forth.

That portion of section 4 of the contract which is important to this discussion is as follows:

" . . . The party of the first part (Power Company) *agrees to use such water not so required,* provided the water not so required shall . . . exceed thirty second feet."

(Then come the provisions regarding the notice to be given by the purchaser and the rate to be paid by the seller for the water turned back.)

" . . . stating that it (Irrigation District) does not desire to use the water for such specified month or months, and thereupon the party of the first part shall be entitled to use such water and *shall become obligated to pay* the party of the second part, its successors and assigns, *for the use* of such water for said specified month or months at the specified rate, . . . "

The essential portions of clause 4 of the deed are as follows:

" . . . the party of the second part hereto (Irrigation District) *agrees to permit the party of the first part* (Power Company) *to use such water* for said period of time."

(Then come the provisions with regard to the notice to be given by the purchaser and the rate to be paid by the seller for the water turned back.)

" . . . stating that it does not desire to use said water for such specified month or months, and thereupon the

party of the first part shall be entitled to use such water and *shall become obligated to pay* the party of the second part, its successors and assigns, *for the use* of such water for said specified month or months at the aforesaid rate, . . . ''

It will be observed that the latter part of the paragraph quoted from the agreement is identical with the comparable provision of the deed. The only difference between the two quoted portions of the instruments is that in the agreement the power company agrees to use such water returned; whereas, in the deed the irrigation district agrees to permit the power company to use the water not required for irrigation.

Let us first consider the question of merger. Whether the stipulations of the contract here in question merged in the subsequent deed is a question to be determined by an examination of the instruments, and the situation, conduct and intention of the parties, and the burden is on the vendor to establish its contention that the vendee accepted the deed in full performance of the prior agreement.

Here we have an agreement providing for the quantity of water, its periods of use, and other terms and conditions of sufficient detail and completeness to enable the parties thereto to carry on under it for over a year, during which time considerable correspondence was carried on between the parties as to the method of operation thereunder. It was during this period prior to the execution of the deed that appellant first released to the power company some of the water it had purchased, which the power company accepted and paid for at the stipulated amount. It is true, however, as pointed out by respondents, that the water so returned was put to a beneficial use by the power company, but we do not believe that is material to a solution of the problem.

The presumption must be that the parties did not contemplate a merger, for the Sierra Company, being a public utility, could not sell, lease or otherwise dispose of any of its operative property without the consent of the Railroad Commission. The parties appreciated the necessity of obtaining the approval, for, in the agreement, it was stipulated that it, " . . . is made subject to the approval of such Commission or other public bodies of the State of California as may be necessary ".

In the deed is contained the following: "This deed and agreement is made with the approval of the Railroad Commission of the State of California by its order duly given and made on the 22nd day of October, 1919, . . . " The Commission made no order approving the deed and we must assume that the parties were complying with the order of the Commission referred to in the agreement when they drafted the deed, and that their intention was that the deed was in accordance with the agreement as approved by the Commission. If the deed is not in conformance with the agreement, it must be to that extent void. When the terms of the agreement were approved and the parties were directed to execute a deed in conformity therewith, they were not at liberty to depart from the terms of such authority, even if they had so desired. (*Sierra etc. P. Co.* v. *Universal Elec. etc. Co.*, 197 Cal. 376 [241 Pac. 76]; *Napa Valley E. Co.* v. *Calistoga E. Co.*, 38 Cal. App. 477 [176 Pac. 699].)

So, also, were the powers of the irrigation district strictly limited. It could neither dispose of its property nor accept property particularly when coupled with an obligation, unless authorized so to do by clear authority. The contract in question contained the authorization to the officers of the district to accept a deed in accordance therewith, but beyond that their authority did not extend, and if the deed differed in any material respect from the agreement, it could not effect a merger.

It is also provided in the deed that it is made in fulfillment of the obligation imposed upon it by the prior contract, which indicates the intent of the parties, and by such reference makes it proper to examine the agreement to see what terms are referred to.

"It is true that when a contract to convey is followed by a conveyance the terms of the contract are merged into the conveyance and the latter becomes the measure of the rights of the parties (*Bryan* v. *Swain*, 56 Cal. 616, 617). But when the conveyance makes special reference to the conditions of the contract and recites that it is made for the purpose of fulfilling the same, it is proper to examine the contract to see what conditions are referred to. But in any event, the contract gave the right to select the lots after the land had been deeded to the company and platted for sale. This

contract was valid when made because the company was not then a public utility. The subsequent deeds to the original owners were merely evidence of the company's recognition of its contractual obligation. The original contract was admissible to show the intention of the parties.'' (*Newell* v. *Redondo Water Co.*, 55 Cal. App. 86 [202 Pac. 914, 916].)

As previously noted, the agreement provides that the power company *agrees* to *use such water not so required,* followed by the further condition *"and* (Power Company) *shall become obligated to pay . . . for the use of such water".*

The deed recites that irrigation district ''agrees to permit party of the first part to use such water'', followed by the same condition as in the agreement, *"and* (Power Company) shall become obligated to pay . . . for the use of such water.''

It appears from the testimony that until the season of 1927 the power company had paid for the water so released, as had also the successor in interest, Pacific Gas and Electric Company, and the defendant irrigation districts as assignee of the rights of the power company, although it also appears that it was not until 1927 that the water was allowed to spill back into the river instead of being put to use by any of the parties.

It is also of some force, as bearing upon the contention of appellant, that if respondents were to accept or refuse the proffered water at their option, that it would not then have been necessary to insert in the agreement and deed the provisions that the district must release the water in periods of not less than thirty days, either at the beginning or ending of the irrigation season, and that the amount so released should exceed 30 cubic feet per second, and that the basis of compensation of the amount so to be paid for such use was $\frac{1}{6}$ of $5\frac{1}{2}$ per cent of the purchase price, i. e., $170,000 for the use of 60 second-feet of water for a period of one month, and that the appellant would give respondents at least thirty days' prior notice of its election not to use such water, all of which detailed provisions, it would seem, would be unnecessary if the respondents had the option of using the water or allowing it to waste, for if they had the option of accepting or rejecting the proffered water, it would need no elaborate formula as to the price of water, because

the parties could bargain as to the amount of water and the value thereof upon each occasion of its release. It would also seem reasonable that, if respondents could accept or reject the water at their option, there would be some provision in the contract between the parties whereby respondents would be required to notify appellant of their election either to use and pay for the water or to allow it to go unused.

The reasonable construction to place upon the contract, we believe, is that the power company agreed to use the water not required by the district for irrigation, in consideration of the district restricting its use solely to irrigation, thereby eliminating itself as a competitor in the field of electric power, and that the power company would therefor pay its proportion of the carrying charge during the time the district did not need the water for irrigation. Inasmuch as the deed was made in fulfillment of the obligations imposed by the contract, which was approved by the order of the Railroad Commission, in October, 1919, three months before the execution of the deed, we must hold there was no ambiguity in the agreement or deed and that the respondents are obligated thereunder to pay for the water not required by appellant.

Respondents admit that, as successors in interest of the Sierra Company, they are liable to perform the obligations imposed by the deed, but deny that they are bound by any additional covenants which may be found in the contract. This position is based upon the language of the assumption of the obligations of the Sierra Company. The assumption is an agreement between respondents and the Sierra Company wherein certain water rights are conveyed, including the La Grange water right, which is conveyed subject to "the right granted by the Sierra Company . . . by deed bearing date January 24, 1920, . . . " On the other hand, the respondents herein covenanted to assume "all the obligations of the Sierra Company and the Pacific Company with respect to the said Waterford Irrigation District . . . "

If the latter blanket assumption is not sufficient, nevertheless, the narrow construction of respondents by reference to the deed of January 24, 1920, will not avail them, for in the deed *direct* reference is made to the prior contract, and

they are placed on notice as to the terms of the agreement in partial fulfillment of which the deed was given.

It was said in *Newell* v. *Redondo Water Co., supra:* "But when the conveyance makes special reference to the conditions of the contract and recites that it is made for the purpose of fulfilling the same, it is proper to examine the contract to see what conditions are referred to."

The correspondence in evidence between the parties had prior to the execution of the deed shows a familiarity by the respondents of the terms of the agreement, and the fact that for a year prior to the deed the water was diverted under the agreement and transported through the canals of the respondents brings to them actual notice of the existence of the agreement.

Respondents urge that certain stipulations entered into between counsel for the respective parties during the action preclude appellant from disputing the claim that the deed was approved by the Railroad Commission, but a reading of the record shows that what the parties agreed to was that the Railroad Commission made an order approving the contract and that the deed, when executed as provided in the contract, was to be filed with the Railroad Commission, and that the deed was so filed.

Respondents also contend that inasmuch as appellant, in a prior action between the parties and others to quiet title to the water here in question, set up and relied upon the validity of the deed here before us, and, also, in the present action that appellant pleaded the due execution of the deed and contract, raised an estoppel against appellant on the question of the validity of the deed, so far, at least, as the authorization by the Railroad Commission is concerned. But appellant is not attacking the validity of the deed, but is here defending that instrument, claiming that it is in conformity with the contract and the previous order of the Railroad Commission.

For the reasons given, we believe that the agreement and the deed were not merged; and that the respondents are obligated to pay for the water released by appellant in accordance with the terms of the contract. Therefore, the judgment is reversed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 16, 1933.