[Civ. No. 17800.   First Dist., Div. Two.   May 14, 1958.]

CITY OF HAYWARD, Respondent, v. MARIAN CECILE MOHR, Appellant.

Harold D. Mefford for Appellant.

John W. Scanlon, City Attorney, and Breed, Robinson & Stewart for Respondent.

BRAZIL, J. pro tem.*—Appellant, Mrs. Mohr, is the owner of a 108-acre parcel of land just south of the city of Hayward, and immediately north of Middlefield subdivision. In December 1950, the appellant by indenture conveyed an easement to the Middlefield Company, which at that time was opening up a subdivision in unincorporated territory right next to Mrs. Mohr's property. The easement covered a strip of land 25 feet wide across the southwesterly corner of the Mohr parcel, and it was for the construction, maintenance and operation of a sewer line and drainage ditch. The area embraced within the easement is only 625 square feet. In this indenture for an easement there is reserved to the grantor the right to use the strip of land for any purpose not inconsistent with the stated use thereof by the grantee.

The provision in the deed of December 1950, which forms the basis of the controversy involving value of property taken by respondent in a condemnation action is as follows:

"As a further consideration for the execution of this indenture [a deed signed by grantor and grantee] by First

---

*Assigned by Chairman of Judicial Council.

Parties, [Marian Mohr Fry, formerly Marian Mohr and Jeryl R. Fry, her husband] First Parties, their heirs, executors, administrators, successors and assigns, shall have and they are hereby granted the right and privilege of making sewer connections to any sewer line constructed by Second Party in the easement and right of way herein granted for furnishing sewerage facilities for any improvements hereinafter constructed by First Parties, their heirs, executors, administrators or assigns, or by any tenant of First Parties, on all lands owned by First Parties adjoining the hereinabove described easement, without any connection fee being charged or paid therefor and free of any sewer rental.''

The Middlefield Company transferred the subdivision to Treeview Homes, Inc., and that company constructed an eight inch sewer line in the 25-foot easement. By written contract, the respondent took over the actual maintenance of the line which was connected with the city's sewer system. There was however no transfer or assignment of the easement, as distinguished from the physical sewer line, from either Middlefield Company or its successor in interest, the Treeview Homes, Inc.

The respondent filed an action in eminent domain for a right of way for sewer purposes over a strip of land 53 feet wide, also across the southwesterly corner of appellant's property, which 53-foot strip includes within its dimensions the whole of the aforementioned 25-foot easement. Neither Middlefield Company nor Treeview Homes, Inc., was made a party defendant in this action. Upon obtaining an order for immediate possession, the city built a new 18-inch sewer line parallel to the old 8-inch line, then took up the smaller line and put in a 30-foot wide drainage ditch. The ditch is on the side of the 53-foot right of way which is farthest from Mrs. Mohr's property. The new sewer line is then embedded in the ground between the Mohr property and the new drainage ditch which more than covers the original 25-foot easement.

The portion of the land sought to be condemned which was used for the drainage ditch does not as a matter of law constitute an exclusive use, but as a practical matter it would be difficult to use it for any other purpose. It is physically possible to reconstruct a sewer line in the original 25-foot strip, but it would be expensive and impractical as the bank of the ditch would have to be reinforced and the sewer line would have to be encased in a concrete jacket. The balance of the right of way sought by respondent is, of course, not exclusive

as the 18-inch sewer line lies under the surface of the ground. Up until trial of the action, the appellant had as yet had no occasion to make any sewer connections as her property was in an undeveloped state.

The trial court found that the diminution in value of the larger parcel remaining and the just compensation to which the owner was entitled by reason of the acquisition of the 53-foot right of way was $429. No evidence was received or permitted on the damage, if any, to the appellant arising out of any right she may have had by reason of the provision in the December 1950 deed reserving to the grantor the right of free sewer connection and free sewer rental. The trial court determined that whatever rights the appellant may have had by reason of the reservation in that first deed, they were not property rights which required an award in a condemnation action.

The appellant first makes a technical objection that the trial court did not make a specific finding upon the issue of damages resulting from the taking to the remaining parcel, in addition to a finding of the value of the land taken. Cited in support of this claim are *People* v. *Ocean Shore Railroad, Inc.*, 22 Cal.App.2d 657 [72 P.2d 167] and Code of Civil Procedure, section 1248, subdivision 2. In the Ocean Shore case the condemnor sought a fee title for highway purposes, while here only a non-exclusive easement for a sewer line and drainage ditch is being condemned. Also in the cited case there was no finding at all on the diminution in value, if any, to the remaining portion; and here the court found the diminution in value together with the just compensation for the property taken or damaged to be $429. There is nothing in Code of Civil Procedure, section 1248, subdivision 2 which requires a more specific finding on the subject than was made by the trial court.

The court made no award of damages for any impairment of appellant's right to make sewer connection free of charge and to have free sewer rental under the provisions of the December 1950 deed. The trial court determined that those rights, whatever else they might be, were not property such as is contemplated by the provisions of article I, section 14 of the state Constitution, which would require an award in a condemnation action for their impairment or loss.

Appellant's position is stated in the opening brief in this manner: ''That this right to receive sewer service for any future improvements constructed on her remaining adjacent

lands is a valuable property right appurtenant to these remaining lands," and furthermore, "there can be no question that the right reserved here by appellant constitutes an interest in real property, the taking or damaging of which is compensable."

The appellant is concerned with what she asserts is a valuable right; the right to have all her remaining property use a sewer line in the original 25-foot easement without any charge for rent or for connections. If her remaining lands do have this right as appurtenant to the land, then it could well be very valuable, for considering the number of houses that can be built on 108 acres of land and multiplying the result by the individual connection fee and the yearly rental therefor, we would find the amount of money involved to be considerable.

Whether the trial court is right or wrong is determined by a consideration of the free service provision of the December 1950 deed which created the original 25-foot easement. The city, not having sued the owners of the easement and not having acquired it by assignment or deed, this action is not concerned with what damage or loss to the easement, if any, may have resulted from the taking in the city's condemnation action. Nor does the present action concern itself at all with any contractual rights or obligations that may exist between Mrs. Mohr and either the Middlefield Company or its successor, Treeview Homes, Inc. In discussing the problem presented by this appeal, we assume that a right to free sewer connections and free sewer rental can be the subject of a burden or servitude upon land even though not specifically mentioned in section 801 of the Civil Code. If the so-called reservation is not appurtenant to the land taken or damaged by the city of Hayward, but is only a personal contract of some kind, then it is not the kind of property for the impairment or loss of which compensation is required to be paid by the condemnor under the provisions of article I, section 14 of the Constitution.

"This is so [no damages for loss of business located on land taken] because it is only the value of, and the damage to, the property itself which may be considered." (*People* v. *Ricciardi*, 23 Cal.2d 390, 396 [144 P.2d 799]—a proceeding in eminent domain.)

The essential qualities of easements are: 1. They are incorporeal; 2. They are imposed on corporeal property; 3. They convey no right to a participation in the profits aris-

ing from such property; 4. They are imposed for the benefit of corporeal property, and 5. There must be two distinct tenements—the dominant, to which the right belongs, and the servient, upon which the obligation rests. (*Kellett* v. *Clayton*, 99 Cal. 210, 212 [33 P. 885].) ▮ An easement is an incorporeal interest in the servient estate. (*Elliott* v. *McCombs*, 17 Cal.2d 23, 30 [109 P.2d 329].) ▮ "An easement is generally defined as 'an interest in land created by grant or agreement, express or implied, which confers a right upon the owner thereof to some profit, benefit, dominion or lawful use out of or over the estate of another.'" (*Mosier* v. *Mead*, 45 Cal.2d 629, 632 [290 P.2d 495].)

▮ "Like a natural right, an easement constitutes a limitation on the possessory rights of an owner of land." (American Law of Property, vol. 2, p. 231.)

"Under the definition of an easement given in the Restatement of the Law of Property, six factors are stressed, (a) the fact that it is an interest in *land* which is in possession of another; (b) the content of the interest as a 'limited use or enjoyment of the *land* in which the interest exists,' (c) the availability of protection of the interest as against interference by third persons; (d) the absence of terminability at the will of the possessor of the *land*; (e) the fact that it is not a normal incident of a possessory *land* interest; and (f) the fact that it is 'capable of creation by conveyance.'

▮ "While an easement is clearly an *'interest in land'* for the creation of which compliance with the Statute of Frauds is requisite, it is equally clearly never an *'estate in land.'*" (Powell on Real Property, vol. 3, p. 385, emphasis added.)

The foregoing statement that an easement is not an *estate in land* is consistent with sections of the Civil Code dealing with interests in property. Section 701 of that code reads: "Interests in Real Property. In respect to real or immovable property, the interests mentioned in this chapter are denominated estates, and are specially named and classified in part two of this division" of Civil Code as an estate in real property.

▮ Under the foregoing rules and definitions the claimed right of free sewer connection and rental created by the indenture of 1950, could not itself be an easement. The easement granted to Middlefield Company by appellant while it is an *interest in land,* it is not itself either *land* or an *estate in land.* It could not therefore act as the servient tenement

for the claimed easement of free service, with the adjacent lands of the grantor as the dominant tenement. Whether the claimed right of free connection and rental reaches the dignity of a contract need not here be decided; but surely it appears to be no more than as described in appellant's answer on file to the complaint in eminent domain as ''that certain written contract of 20 December 1950.''

*Balestra* v. *Button*, 54 Cal.App.2d 192 [128 P.2d 816]; *Newell* v. *Redondo Water Co.*, 55 Cal.App. 86 [202 P. 914], cited by appellant in support of her position that the indenture of 1950 created an easement for the benefit of her remaining lands are not in point, for each involves the imposition of a burden on land or an estate in land, and not, as we have here, upon another easement, which is after all an incorporeal interest.

The case from which the following quotation is taken involves an action in eminent domain where it became important to determine whether or not certain deed restrictions imposed on all lots in a tract for the mutual benefit of each lot, were a property right for which compensation must be made in such condemnation action.

''It therefore appears that the city may proceed as contemplated unless the plaintiffs and others similarly situated in the tract have such property interest in the portion of lot 2 acquired by the city as would require that such interest be purchased or condemned before the city may be permitted to construct a public street thereon. It was conceded by counsel for the plaintiffs at the oral argument, and we think properly, that the legal situation of the parties hereto would be the same whether the proposed street were to be improved on property acquired by the city by voluntary dedication or by proceedings in eminent domain. . . .(citation). If the plaintiffs are possessed of a property right in said portion of lot 2 it may be taken for granted that they would be necessary parties defendant in any suit brought by the city to condemn said land for street purposes. . . . The plaintiffs expressly 'do not contend that parties may by private contract restrict the exercise of the power of eminent domain,' yet by private contract with their neighbors they have created, if their position be sustained, an estate inherent in each lot in the tract protected against the taking or damaging thereof without compensation and have brought about a situation where the number of parties defendant and of the interests to be appraised in condemnation would be manifold. In cases of large tracts

the increase in number would practically be prohibitive. It is true that the increase in the number of the defendants and interests to be appraised is not determinative or controlling, provided an estate be created which must be measured in money in the condemnation suit, but such results may be considered where we approach a contention that by private contract an estate in land unknown to the common law or the law of this state is created which would have the result of greatly increasing the cost of condemnation proceedings and making them more burdensome on the public. As above noted, the interest sought to be imposed on said portion of lot 2 is no more than a negative easement or an equitable servitude. It does not rise to the dignity of an estate in the land itself. It is not a property right, but is a contractual right cognizable in equity as between the contracting parties, not binding on the sovereign contemplating a public use of the particular property taken." (*Friesen* v. *City of Glendale*, 209 Cal. 524, 530, 531 [288 P. 1080].)

The rights of appellant, whatever else they may be, do not constitute property, within the meaning of article I, section 14 of the state Constitution, for the taking or damaging of which compensation must be paid in an action in eminent domain.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J., concurred.