[Civ. No. 20170. First Dist., Div. One. May 7, 1962.]

FARRIS CARTER GOBLE et al., Plaintiffs and Respondents, v. EARL DOTSON et al., Defendants and Appellants.

Bruce B. Bruchler for Defendants and Appellants.

Phil N. Crawford for Plaintiffs and Respondents.

BRAY, P. J.—In an action containing a count for specific performance and one for damages, the court denied specific performance but awarded plaintiffs $2,500 damages. Defendants appeal.

274

1. Is the alleged agreement barred by section 1971, Code of Civil Procedure?
2. Was parol evidence thereof admissible?

RECORD

Defendants owned real property located on the shore of Clear Lake. August 15, 1956, after preliminary negotiations, plaintiffs and defendants signed an agreement in which plaintiffs agreed to purchase and defendants agreed to sell "one lot description to be furnished when surveyed" for $7,000, payable $50 per month including interest at 6 per cent; buyer could pay balance at any time. An escrow was opened in a title company, a survey was made and a preliminary title report obtained. On November 13, 1956, defendants executed and delivered a deed of the property to plaintiffs. In about a year and a half plaintiffs completed payment on the promissory note they had given in connection with the purchase. The deed provided in part: "This deed is given and accepted upon the condition that no piers, boat houses or boat harbors shall be constructed, erected or maintained" on the property. The deed also provided a grant of "a non-exclusive right of way for road purposes over and across a 12 foot right of way...."

Over objection, testimony was introduced concerning an oral understanding of the parties that as part of the purchase of the property, plaintiffs would get certain boat berthing rights in a nearby lagoon plus the right to obtain water pumped from a well owned by defendants. Defendant Earl Dotson told plaintiffs that the Dotson land was being divided into seven or eight parcels, each parcel to have the same restriction on the use of the waterfront, but each parcel would be provided with two boat spaces on the lagoon, each lot owner to have the same boat rights as the other owners. A communal boathouse was to be built, but its exact location on the lagoon was uncertain.

About one and a half years after plaintiffs received their deed, defendants excavated a channel off the lagoon and erected a large boathouse. Defendants periodically assured plaintiffs that the boathouse would be built, and did not repudiate the oral agreement until after plaintiffs objected to the form of the proposed written agreement, which we discuss hereinafter. In the spring of 1959 plaintiffs told defendants that they intended to sell their parcel, and, for the protection of all concerned, wanted the boat rights put in writing.

Defendants agreed to do this. The rights were to be appurtenant to the land, could not be sold separately from it, or retained if the land were sold. Defendants admitted that plaintiffs were entitled to the boathouse rights. It was understood that plaintiffs were to bear their share of the expenses. Defendants drew up an instrument (which was never signed).

This document was similar to the agreement given Roller, as hereinafter set forth, but contained an additional clause to the effect that if plaintiffs sold to a party who already owned property in the tract the boathouse rights would lapse. This was aimed at Louis C. Roller, who then was the only other purchaser in the tract. Defendants had made to Roller the same oral representations to the effect that the restrictions, the boat rights, and the pump rights, would apply to all eight parcels.

In August 1956, and prior to the sale to plaintiffs, Roller discussed with defendant Earl Dotson the buying of a lot in the tract, and was told by defendant that with each lot that was sold a right to build a boathouse on the lagoon was to go with the lot. However, before the sale was closed, defendant stated that he would build a boathouse and each lot owner would have space in it for two boats. Then on September 4, Roller and defendants entered into a written agreement which recited that a boathouse was to be built to be "for the use of Second Party [Roller] and other purchasers of land within the tract from First Parties," Roller to be provided space in the boathouse "consisting of a slip for two boats. . . ." "8. The parties hereto hereby agree that said exclusive right to use a portion of the boathouse shall not be deemed or construed to be an interest in real property, but that it shall be appurtenant to the real property conveyed by First Parties to Second Party as hereinabove mentioned; that such right may not be sold or transferred by Second Party to any person or persons except to a purchaser or purchasers of the real property belonging to Second Party as herein mentioned, and that Second Party may not maintain the right to use a portion of said boathouse, in the event that he sells said real property, such right, in the event of a sale of said real property by Second Party, may only be transferred to said purchaser, or revert to First Parties." There was no restriction on the conveyance of boathouse rights in the event of a sale to other parcel owners.

When plaintiffs learned that defendants had executed the Roller agreement, they requested defendants to give them the

agreement as promised, offering to pay their proportion of the cost of the boathouse. They had not requested it earlier because the boathouse had not been completed and they had not had an occasion to use a boathouse. It was then that defendants delivered to plaintiffs the unsigned document before mentioned, which plaintiffs rejected because of the clause terminating the rights upon sale to the owner of a lot in the tract.

A title company escrow officer testified that ordinarily boathouse rights such as those granted by defendants to Roller would be contained in an agreement separate from the deed. There was evidence that the boat rights alone were worth $2,500-$3,000, and that the value of the land, for which plaintiffs paid $7,000, was worth $2,500-$3,000 less without the boat rights.

Defendant Earl Dotson stated that he had never even intimated that the boathouse was to be anything but commercial, that at the time he sold the land to plaintiffs he had no plans to divide up the land, and that he told neither plaintiffs nor Roller that they would have rights to berth their boats in the lagoon. Yet this is inconsistent with the fact that he did give Roller boathouse rights and that, when plaintiffs asked him for an agreement similar to the one given Roller, defendants immediately produced such an agreement, the only difference being a clause, the effect of which was to make the boathouse rights ineffective if plaintiffs sold to Roller.

Defendants complain that the only oral testimony corroborating plaintiffs' story was that of Mrs. Goble's brother. The credibility of plaintiff Farris Goble and his brother-in-law was a matter for the trial court to determine. It is clear that the court believed them.

Apparently, plaintiffs assisted defendants in their application to the board of supervisors for a boathouse permit, but when they learned that the permit issued defendants was for a commercial boathouse, they petitioned the board to set aside the permit.

1. *Section 1971, Code of Civil Procedure.*

Defendants contend that their demurrer to the complaint should have been sustained on the ground that the alleged agreement violated the statute of frauds. They also contend that parol evidence of the agreement should not have been admitted for the same reason and that its admission was an attempt to vary the terms of a written instrument by parol evidence.

Section 1971 provides: "No estate or interest in real property . . . can be created, granted, assigned, surrendered, or declared, otherwise than by . . . a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same. . . ." Section 1973, subdivision 4, Code of Civil Procedure, and section 1624, subdivision 4, Civil Code, also require an agreement "for the sale of real property, or of an interest therein" to be in writing.

Whether the right to berth a boat is an interest in real property has not been determined in California. The discussion in Powell on Real Property, volume 3, page 388, footnote 30, would indicate that in other jurisdictions it is so considered. (The agreement given by defendants to Roller provides that the right given him is not to be construed as an interest in real property.) "An easement is an *interest in the land of another*, which entitles the owner of the easement to a *limited use or enjoyment* of the other's land." (2 Witkin, Summary of Cal. Law, p. 1015.) The right in question is not one of those listed in section 801, Civil Code. However, by specifying certain servitudes that may be attached to land for the benefit of the dominant tenement, the section does not purport to designate all such servitudes. (*Wright* v. *Best* (1942) 19 Cal.2d 368 [121 P.2d 702].) Water is a part and parcel of the land to which it is appurtenant and any attempt to convey an interest in it is within section 1971. (*Stepp* v. *Williams* (1921) 52 Cal.App. 237 [198 P. 661].) In *Empire Investment Co.* v. *Mort* (1915) 169 Cal. 732 [147 P. 960], an oral agreement to build and maintain certain levees near the property purchased was held to be an interest in land as to which the statute of frauds applied.

Plaintiffs allege that the terms and provisions of the oral agreement of the parties were those set forth in the proposed agreement attached to the complaint as exhibit I. This states: "The parties hereto hereby agree that said exclusive right to use a portion of the boathouse *shall not be deemed or construed to be an interest in real property,* but that it shall be appurtenant to the real property . . ." conveyed to plaintiffs. (Emphasis added.) A similar clause appears in the Roller agreement.

To constitute an easement there must be an interest in land. (*City of Hayward* v. *Mohr* (1958) 160 Cal.App.2d 427, 432 [325 P.2d 209].) In that case the appellant had granted to the Middlefield Company, which was opening up a subdivision

adjacent to her property, an easement for the construction and operation of a sewer line across her property. In consideration thereof the company granted her as well as her tenants the right to make, from any improvements constructed on her land, sewer connections to, and to use, any sewer constructed on said easement without any connection charge or sewer rental. The City of Hayward brought an action to condemn certain portions of the appellant's land. The trial court held that whatever rights the appellant had in the Middlefield Company's sewer were not property rights which required an award in a condemnation action, on the ground that the right of free sewer connection and rental could not itself be an easement, and therefore was not an interest in land. The reviewing court cited *Friesen* v. *City of Glendale,* 209 Cal. 524, 530, 531 [288 P. 1080]. There, when a certain tract was laid out all deeds conveying lots therein contained the restriction " 'That said premises shall be used for residence purposes only.' " (P. 527.) The grantees of a deed to lot 2 in the tract executed a deed of the south one-half thereof to the city of Glendale for public street purposes. When the city attempted to construct a street thereon, plaintiffs, owners of property in the tract, sought to enjoin the city from so doing without compensating plaintiffs, on the ground that each owner of a lot in the tract had a proprietary interest in the portion of the lot proposed to be improved for street purposes, which interest could not be taken for public use without compensation. The court held that plaintiffs' right was not a property right "but is a contractual right cognizable in equity . . ."—". . . no more than a negative easement or an equitable servitude." (P. 531.)

In view of the express understanding of the parties that plaintiffs' right was not to constitute interest in the land, it is doubtful if section 1971 applies.

Assuming, however, that the oral agreement was one subject to the statute of frauds, either because the right granted was an interest in land or because, as defendants contend, the agreement was one to make an agreement, nevertheless the complaint stated a cause of action for two reasons: (1) The complaint adequately pleaded an estoppel to set up the statute. It is alleged that the "oral agreement was a material inducement for plaintiffs' purchase of said land which plaintiffs relied on in purchasing the same"; that plaintiffs paid defendants the purchase price, and that a portion of the price was intended to be for the boathouse rights.

Where a party accepts the benefits of an oral contract which he has agreed to perform, he will be unjustly enriched if the contract is not enforced; and the statute of frauds will not be applied to such contract. (*Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621, 623-626 [220 P.2d 737].) ▉ "The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. [Citations.]" (*Monarco* v. *Lo Greco, supra,* pp. 623-624.)

▉ The court found that unless the agreement between the parties for irrigation pump rights and boathouse rights is acknowledged and plaintiffs have their remedy for defendants' breach thereof, "plaintiffs would suffer a fraud perpetrated against them by reason of defendants' conduct."

▉ The type of fraud here is that expressed in *Notten* v. *Mensing* (1935) 3 Cal.2d 469, 476 [45 P.2d 198] : "In order to raise the estoppel, fraud in some form is essential, but it is not required that an actual intent to defraud or mislead exist —all that is required is that there exist 'a fraud inhering in the consequences of thus setting up the statute.' (*Seymour* v. *Oelrichs, supra* [156 Cal. 782 (106 P. 88, 134 Am.St.Rep. 154)], p. 796.) In *Anderson* v. *Hubble,* 93 Ind. 570, 576 [47 Am.Rep. 394], (which case is quoted with approval in the *Seymour* case, *supra*), the rule is stated as follows: 'It is not necessary, in order to the existence of an equitable estoppel, that there should exist a design to deceive or defraud. The person against whom the estoppel is asserted must, by his silence or his representation, have created a belief of the existence of a state of facts which would be unconscionable to deny, but it is not essential that he should have been guilty

of positive fraud in his previous conduct. . . . All that is meant in the expression that an estoppel must possess an element of fraud is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. . . . There need be no precedent corrupt motive or evil design.' '' (See also *Monarco* v. *Lo Greco, supra,* 35 Cal.2d at p. 624.)

(2) The complaint contains allegations which in effect can be considered asking for restitution of the overpayment of the portion of the purchase price represented by the value of the boathouse rights. Although not exactly an exception to the statute of frauds, restitution of the overpayment of a purchase price where enforcement of an oral contract is barred by the statute may be granted.

''The failure to give a written agreement as promised in a transaction governed by the statute of frauds thereby rendering the contract unenforceable will entitle the party who has paid money in reliance upon such agreement to its recovery back. [Citations.]'' (*Doke* v. *Brockhurst* (1957) 150 Cal.App.2d 514, 516 [310 P.2d 43].)

As the complaint in anticipation of a demurrer pleaded facts sufficient to state a cause of estoppel, the demurrer was properly overruled. (See *Loper* v. *Flynn* (1946) 72 Cal.App.2d 619, 621 [165 P.2d 256], and 2 Witkin, California Procedure, p. 1364, on the rule that where a complaint shows that the contract would be barred by the statute of frauds, the complaint must by way of anticipation contain facts that avoid the statutory bar.)

The evidence fully supports the estoppel.

2. *Parol Evidence Rule.*

Defendants rely upon cases holding as does *Laux* v. *Freed* (1960) 53 Cal.2d 512, 523 [348 P.2d 873], ''[I]f the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed.''

Their contention that the demurrer was improperly overruled is also based on *Alameda County Title Ins. Co.* v. *Panella* (1933) 218 Cal. 510 [24 P.2d 163], which held that the answer on its face showed that the oral agreement was inadmissible under the parole evidence rule, and therefore was demurrable. That case is not applicable here. There the oral agreement was in direct contradiction of and opposition

to the terms of the written contract. However, the oral agreement alleged and proved here in nowise added to, detracted from, varied or contradicted the written agreement.

The agreement was of the type discussed in 18 California Jurisprudence 2d, pages 750-751: ''The extrinsic evidence rule does not prohibit parol proof of an agreement collateral to the written agreement but entered into contemporaneously with the writing, relating to a distinct but incidentally or closely related matter as to which the writing is silent, and not inconsistent with its terms. Such parol evidence cannot be said to contradict or vary the terms of the written instrument. But where the evidence of a contemporaneous oral agreement conflicts with the plain terms of the written contract, it is inadmissible. And in the case of a written instrument which prima facie purports to embody the complete obligations of the parties, this exception to the extrinsic evidence rule applies only where the circumstances attending the execution of the instrument infer that the parties did not intend it to be a complete and final statement of the whole transaction.'' (Footnotes omitted.)

 *Ellis* v. *Klaff* (1950) 96 Cal.App.2d 471 [216 P.2d 15], states the rule a little differently. ''It does not, therefore, render inadmissible proof of contemporaneous oral agreements collateral to, and not inconsistent with, a written contract where the latter is either incomplete or silent on the subject, and the circumstances justify an inference that it was not intended to constitute a final inclusive statement of the transaction. [Citations.]'' (P. 476.)

''It is a well understood concurrent rule that where parol evidence is entirely consistent with and in no way changes or contradicts the written contract, it should be admitted. (*Greathouse* v. *Daleno,* 57 Cal.App. 187 [206 P. 1019].) The rule that a writing supersedes all contemporaneous oral negotiations has no application to an independent contract arising out of matters provided for in the written agreement. [Citations.]'' (*Lacy Mfg. Co.* v. *Gold Crown Mining Co.* (1942) 52 Cal.App.2d 568, 577-578 [126 P.2d 644].)

 As the evidence shows that the parties did not intend the written agreement to be a complete and final statement of the whole transaction, there was no error in admitting the evidence showing the contemporaneous oral agreement.

Defendants contend that the finding that the value of the pumping and boathouse rights at the time of the sale and at

the time of demand was $2,500 and that the land at those times was worth $2,500 less than the price paid by plaintiffs is not supported. Plaintiff Goble so testified and there was no evidence to the contrary. The fact that plaintiffs later sold the property for $10,500[1] does not overcome the testimony that the land without the pumping and boathouse rights was worth $2,500 less than it would have been worth with them.

Defendants' contention that the demurrer for uncertainty should have been sustained is answered by the rule well stated in 2 Witkin, California Procedure, pages 1493-1494: ". . . after a trial in which the defective complaint is treated as raising the issues, any error in overruling the demurrer cannot have been prejudicial, and reversible error is not shown. (*Ades* v. *Brush* (1944) 66 Cal.App.2d 436, 444, 152 P.2d 519; *Baker* v. *Miller* (1923) 190 Cal. 263, 267, 212 P. 11, *supra*, § 396.)"

The judgment is affirmed.

Tobriner, J., and Sullivan, J., concurred.

---

[1] Roller, who purchased from plaintiffs, testified that plaintiff Farris Goble told him that "He had no written agreement [concerning the boathouse rights] but he said he had no trouble getting one. Q. And as a matter of fact you demanded that written agreement, did you? A. Yes." Plaintiffs contend that this meant that plaintiffs promised Roller the boat rights which they expected to get from defendants, and that they will have to refund Roller the $2,500 they receive under the judgment.