[No. G040956. Fourth Dist., Div. Three. Nov. 30, 2009.]

JOSE DE JESUS HERNANDEZ et al., Plaintiffs and Appellants, v. JOSE ANTONIO LOPEZ et al., Defendants and Respondents.

934

**COUNSEL**

Buddy Clark for Plaintiffs and Appellants.

Parker • Stanbury and J. Luis Garcia for Defendants and Respondents.

**OPINION**

**ARONSON, J.**—Following a one-day bench trial, the trial court found defendants Jose Antonio Lopez and his wife, Irma Taira, sold a business they did not own, but the court declined to order disgorgement or other relief in favor of the rightful owners, plaintiffs Leonor and Jose De Jesus Hernandez. The court allowed Lopez and Taira to keep the proceeds of the sale, concluding the Hernandezes' first amended complaint failed to plead adequately claims for unjust enrichment, conversion, or trespass. We reverse and remand for a new trial that resolves plaintiffs' claims under these quasi-contract and tort theories, which, fairly read, fell within the scope of the pleadings and within the facts alleged and proved at trial. In the interests of justice, we also reverse the trial court's determination defendants did not breach the restaurant sales contract with the Hernandezes; the parties are free to relitigate that issue if they so choose.

I

FACTUAL AND PROCEDURAL BACKGROUND

The Hernandezes owned the Wet Burrito restaurant located in leased space in the Brea Shopping Mall. In August 2006, they agreed to sell the restaurant for $140,000 to defendant Jose Lopez. The terms of the contract called for Lopez to assume the existing lease, and the Hernandezes would apply to transfer their liquor license to Lopez. Lopez agreed to pay a $50,000 deposit

and the remainder in installments. The parties instructed their escrow officer to pay the Hernandezes $10,000 from the deposit if Lopez "for any reason fails to close escrow and complete the sale . . . ." In January 2007, while escrow was still open and before the sale was completed, Lopez took control of the restaurant. Rather than assuming the Hernandezes' lease, as called for in the agreement, Lopez, for unexplained reasons, signed a new five-year lease with the landlord.

Snags developed with transferring the liquor license because Lopez's wife had "some problems with her record." On June 14, 2007, six months after he started operating the restaurant, Lopez canceled escrow "[b]ecause they couldn't give us the liquor license."

Pursuant to escrow instructions in the sales agreement, the escrow officer returned Lopez's deposit to him, except for $10,000, which constituted the Hernandezes' liquidated damages. The Hernandezes expected to retain their liquor license and regain control of the restaurant operations, with Lopez vacating the premises.

No one informed California's Department of Alcoholic Beverage Control of the changed circumstances. On June 28, 2007, the department approved the application to transfer the liquor license from the Hernandezes to Lopez. Lopez expressed "surprise" he received the liquor license, but he did nothing to correct the mistake.

The parties had differing versions about what happened next. Lopez said he intended to go ahead with the sale and pay the Hernandezes the full purchase price. But he also stated he intended to "give them back the business." "I called them twice on the phone. And I couldn't find them." He remained in the restaurant because he and his wife "had no way of paying the hefty rent other than to work the restaurant and make money to pay the rent." He explained, "We were willing to sign everything to give them back the restaurant."

According to the Hernandezes, they requested that Lopez complete the sale, but he refused. Instead, he told them: " 'I don't need to negotiate with you. We have the license. We have a lease. And we paid $10,000.' "

In fall 2007, Lopez negotiated to sell the restaurant to a third party for $93,000. This sale closed in 2008. Lopez did not pay anything to the Hernandezes.

The Hernandezes sued Lopez and his wife for breach of contract, intentional tort, and fraud. In August 2008, the trial court held a one-day court trial. It issued its minute order several weeks later, ruling for Lopez and against the Hernandezes. The court recognized Lopez could be legally liable for conversion or unjust enrichment, but determined the Hernandezes' amended complaint failed to plead the appropriate causes of action. The court opined that they could file a new lawsuit because the statute of limitations had not run.

The court's minute order provided: "The first cause of action is for breach of contract. But what part of the contract was breached? The escrow was cancelled (Exhibit 106) in June of 2007, and the sale was not completed. Plaintiffs received their liquidated damages under the contract, $10,000. What the defendants did by obtaining the liquor license, running the business, then selling the business, was not a breach of the contract, because the contract was for a sale of a business to defendants and the business was never sold to them. [¶] . . . [¶] Defendants might be liable for a conversion or trespass, or on a theory of unjust enrichment, but not a breach of contract. They may have had a lease on the premises, but they did not own that business, and the Court is mystified as to how they could sell a business they didn't own, or on what theory they feel they are entitled to keep the $95,000 for which they 'sold' the restaurant. The Court offers no opinion or advice on the topic of what should have been plead in the complaint, but it would appear that the statute of limitations has not yet run on other potential causes of action."

The Hernandezes filed a separate lawsuit with new causes of action for unjust enrichment and conversion but it ran afoul of the doctrines of merger and bar.[1]

The Hernandezes timely appealed from the judgment in the underlying action that they take nothing. The parties' briefs on appeal dealt solely with issues pertaining to the cause of action for breach of contract. We asked for supplemental briefing on whether the amended complaint sufficiently stated claims for unjust enrichment, conversion, or trespass. The Hernandezes filed a supplemental brief, but defendants did not.

---

[1] We take judicial notice of the record in *Hernandez v. Lopez* (Super. Ct. Orange County, 2009, No. 30-2008-00110962) referred to in the respondents' brief.

## II

### DISCUSSION

#### A. *The Plaintiffs Adequately Stated Claims in Quasi-contract and Tort*

The trial court expressed its inclination to rule for the Hernandezes, but declined to do so because it could not find in their complaint causes of action labeled "unjust enrichment" or "conversion." According to the trial court, "The defendants may be liable for what they did (selling a business they didn't own), but not under the theories [pled] in the complaint before this Court." The trial court focused unduly on labels.

■ "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) " 'A party is entitled to any and all relief which may be appropriate under the scope of his pleadings and within the facts alleged and proved, irrespective of the theory upon which the facts were pleaded, [or] the title of the pleading . . . .' " (*Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 904 [99 Cal.Rptr.3d 870].) We have the power, as a reviewing court, to disregard the "mislabeling" of causes of action, where supported by the record. (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1566 [54 Cal.Rptr.2d 468] (*Thrifty-Tel*).)

Since the record establishes that the trial court did not weigh the evidence supporting claims other than for breach of contract, we do not accord its judgment a presumption of correctness. (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477 [53 Cal.Rptr.3d 673].) "[O]ur inquiry ends and reversal is required once we determine a complaint has stated a cause of action under any legal theory." (*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 603 [6 Cal.Rptr.3d 574].)

#### 1. *The Claim for Unjust Enrichment*

■ The trial court's holding provides a textbook example for application of the equitable doctrine of unjust enrichment. The doctrine applies where the plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on the defendant which the defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value. (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 195 [98 Cal.Rptr.2d 44] (*Dunkin*).) The defendant in an unjust enrichment claim must pay the amounts necessary to place the plaintiff in as good a

position as he or she would have been had no contract been made. (*Id.* at p. 198.) Consequently, "[a]n award limited to unjust enrichment is a relatively mechanical and undemanding calculation." (*Id.* at p. 197.) *Dunkin* explained, "the measure of damages . . . for unjust enrichment 'is synonymous with restitution.' " (*Id.* at p. 198.) " ' "In modern legal usage, its meaning has frequently been extended to include not only the restoration or giving back of something to its rightful owner, but also compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury cause to, another." ' " (*Ibid.*)

■ *Dunkin* also explained a plaintiff need not amend his pleading to seek compensation under an unjust enrichment theory, but could do so based on the pleaded cause of action for breach of contract. " 'The phrase "Unjust Enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.' [Citation.] ' "[I]n any event, . . . there is no particular form of pleading necessary to invoke the doctrine" of restitution.' " (*Dunkin, supra,* 82 Cal.App.4th at p. 198, fn. 15.)

■ *Dunkin* is dispositive. The Hernandezes' detailed cause of action for breach of contract fully raised all the facts and circumstances in which equity could contemplate a quasi-contractual remedy to prevent Lopez and his wife from being unjustly enriched at the expense of the Hernandezes. "The spirit behind the law of unjust enrichment is to apply the law 'outside of the box' and fill in the cracks where common civil law and statutes fail to achieve 'justice.' " (Roach, *How Restitution and Unjust Enrichment Can Improve Your Corporate Claim* (2007) 26 Rev. Litig. 265, 268.)

### 2. *The Tort Claims*

The trial court mistakenly assumed the Hernandezes' second cause of action for "intentional tort" only pertained to a claim for emotional distress or fraud. But the second cause of action alleged Lopez and his wife "took full control of the Business from Plaintiffs without paying the agreed purchase price, or any price at all; essentially [defendants] stole the Business from Plaintiffs."

■ These allegations are sufficient to support claims for the tort of conversion or its "little brother," the tort of trespass. (*Thrifty-Tel, supra,* 46 Cal.App.4th at pp. 1566–1567.) "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066 [80

Cal.Rptr.2d 704].) ■ A trespass cause of action protects possessory interests in land from unlawful interference. (*Smith v. Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 774–775 [184 Cal.Rptr. 308]; see also *Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 171 [100 Cal.Rptr.2d 662] (*Hassoldt*).)

The torts of conversion and trespass owe their legal complexities to their origins in ancient common law causes of action like trover and ejectment. The tort of conversion, for example, traditionally had been limited to interferences with physical personal property rather than interference to land or leased property, or to intangible property. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119–121 [55 Cal.Rptr.3d 621]; *Thrify-Tel, supra,* 46 Cal.App.4th at p. 1565.) "Intangible interests in *real* property, on the other hand, remain unprotected by conversion, presumably because trespass is an adequate remedy." (*Kremen v. Cohen* (9th Cir. 2003) 337 F.3d 1024, 1031, fn. 7, original italics (*Kremen*).) These history-bound limitations have significantly eroded over time, and many courts and commentators have suggested they be further modernized to better fit contemporary circumstances. (See generally Comment, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine* (1991) 1991 BYU L.Rev. 1681.)

■ The Hernandezes claim that defendants converted their property and violated their right to possess the leased premises and operate their business. Rather than a protracted digression on the technical label of the tort cause of action, " 'the inquiry in a case involving unlawful intrusion on property rights should focus upon the nature of the injury and the damages sought . . . .' " (*Hassoldt, supra,* 84 Cal.App.4th at p. 171.) "[T]he common law does not stand idle while people give away [or sell] the property of others." (*Kremen, supra,* 337 F.3d at p. 1036.) Suffice it to say, defendants may not appropriate the Hernandezes' property interest in their restaurant without having to answer legally—whether in contract, quasi-contract or tort—for the resulting injury to the Hernandezes.

## B. *Plaintiffs Are Entitled to a Determination on All Causes of Action*

We conclude an unqualified reversal is appropriate. Consequently, all legal issues properly raised by the amended complaint, including, but not limited to, the cause of action for breach of contract, may be retried. (See Code Civ. Proc., § 43 [reviewing court may "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had"].) We resolve any doubts in favor of a complete, rather than limited, new trial. (*Liodas v.*

*Sahadi* (1977) 19 Cal.3d 278, 285 [137 Cal.Rptr. 635, 562 P.2d 316] [requiring new trial on all issues because issue of liability inseparable from issue of damages].)

Considering that the trial here lasted less than a day, justice would best be served by an unqualified reversal. (*Leipert v. Honold* (1952) 39 Cal.2d 462, 466 [247 P.2d 324] [limited retrials should be granted "only if it is clear that no injustice will result"].) The legal theories in this case are so intertwined and inseparable as to call for a retrial on all issues rather than a limited new trial on certain issues. (*Gomez v. Volkswagen of America, Inc.* (1985) 169 Cal.App.3d 921, 926 [215 Cal.Rptr. 507] ["the facts alleged in the fifth cause of action are so interwoven with those pleaded in the other causes of action that the determination regarding the fifth cause of action involved consideration of the facts underlying the others, in this case the entire judgment must be vacated and the entire case retried in order to achieve a just result"].)

The trial court, in ruling for defendants on the breach of contract cause of action, apparently took the absolutist position that the parties' decision to cancel escrow automatically served to cancel the contract. The court accepted defendants' argument that "both sides intended to rescind the contract as evidenced by, among other things, [the Hernandezes'] insistence and acceptance of the liquidated damages." It is difficult to fathom how defendants can claim to have cancelled the contract—thereby avoiding its burdens, including the obligation to pay the bargained-for purchase price—while accepting all its benefits. (See *Cohen v. Shearer* (1980) 108 Cal.App.3d 939 [167 Cal.Rptr. 10] [cancellation of escrow in real property transaction does not necessarily compel a court to forgo contractual or equitable remedies].)

■ On remand, the trial court should consider whether Lopez's subsequent conduct reaffirmed the contract, making him liable for contractual damages through the doctrines of waiver or estoppel. A party may be found to have waived a right when its acts are " ' "are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' " (*Monteleone v. Allstate Ins. Co.* (1996) 51 Cal.App.4th 509, 517–518 [59 Cal.Rptr.2d 48]; see also *Berry v. Maywood Mut. W. Co. No. One* (1939) 13 Cal.2d 185, 190 [88 P.2d 705] [ratification of contract by acceptance of benefits].) " ' "The person against whom the estoppel is asserted must, by his silence or his representation, have created a belief of the existence of a state of facts which would be unconscionable to deny, but it is not essential that he should have been guilty of positive fraud in his previous conduct." ' " (*Goble v. Dotson* (1962) 203 Cal.App.2d 272, 279–280 [21 Cal.Rptr. 769].)

## III

### Disposition

The judgment is reversed. Costs on appeal are awarded to plaintiffs.

Sills, P. J., and Ikola, J., concurred.

On December 28, 2009, the opinion was modified to read as printed above.