Filed 8/25/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUSTIN LEBRUN et al., | B309423 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV19752) |
| v. | |
| CBS STUDIOS INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry Green, Judge. Affirmed.

Werksman Jackson & Quinn and Caleb E. Mason for Plaintiffs and Appellants.

Sklar Kirsh, Jessica Pettit and Justin M. Goldstein for Defendant and Respondent.

Code of Civil Procedure[1] section 361 provides (with exceptions not relevant here) that "[w]hen a cause of action has arisen in another State, . . . and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State." In the present case, plaintiffs Justin LeBrun, Bradford Roublow, and Suleman Virani, all Louisiana residents at the time of the relevant events, seek to recover damages in California from defendant CBS Television Studios, Inc. (CBS), based upon fraudulent representations and/or omissions that were made to them in Louisiana, and that caused them harm there. If the lawsuit is deemed to have "arisen" in Louisiana, it is barred by section 361, because the one-year Louisiana statute of limitations expired before the filing of the action. Plaintiffs contend, however, that their causes of action against CBS arose in California, because the fraud committed in Louisiana allegedly was ratified by CBS's conduct in California. Therefore, according to plaintiffs, the more lenient California limitations period applies, and their action is timely.[2]

We hold (as did the trial court) that the causes of action arose in Louisiana, and that they are barred by the Louisiana statute of limitations. We also conclude that plaintiffs cannot state a valid claim

---

[1]     Further undesignated statutory references are to the California Code of Civil Procedure.

[2]     The statute of limitations applicable to fraud claims in California is three years. (§ 338, subd. (d).) Plaintiffs' complaint was filed slightly less than three years after their claims accrued.

2

for unjust enrichment based upon the facts of this case.  Therefore, we affirm the judgment of dismissal.

## BACKGROUND

A.    *Factual Background*

The claims alleged in this case are based upon the filming of a scene depicting an armed robbery of a jewelry store for the CBS television show, *NCIS: New Orleans*.  The following factual background is taken from the allegations of the first amended complaint, which allegations we assume are true under the standard of review applicable to our review of a trial court's ruling on a demurrer.  (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

Plaintiffs LeBrun and Roublow are actors who were living in New Orleans, Louisiana at the time of the events at issue; plaintiff Virani is the owner of a jewelry store in Chalmette, Louisiana, near New Orleans.  In October 2017, Derrick Wells, a producer of *NCSI: New Orleans*, spoke to Virani about using his store to film a scene for the show; he also asked Virani to "play" the store owner in the scene.  Virani agreed to both requests.

The scene was to be filmed about a week later.  At that time, LeBrun and Roublow, who were chosen in a casting call for photograph models, reported to the show's set; they expected to model costumes for still photographs.  They met with Wells, who told them that rather than modeling costumes, they would be acting in a scene depicting an armed robbery.  Wells gave them black costumes, ski masks, and realistic-looking prop weapons that looked like high-powered automatic assault

3

rifles and other firearms. Wells, his crew, and the actors drove in an unmarked van to Virani's store, which was located on a busy commercial block. At the direction of Wells, LeBrun and Roublow jumped out of the van in their costumes, brandishing the prop weapons, and stormed into Virani's store shouting lines Wells had instructed them to say; those lines included threats and demands for cash and jewelry. Virani, who was inside the store, played his part by holding up his hands and complying with the "robbers'" demands. A concealed camera that was located inside the store filmed the scene.

Unbeknownst to plaintiffs, no one from CBS or the show had obtained filming permits to shoot the scene, nor had anyone informed the local authorities or the neighboring businesses that they would be filming an armed robbery scene for a television show. They also failed to station a staff member outside the store to reassure neighbors or passersby that there was no actual robbery taking place. In the words of the complaint, CBS, through its employees and agents, decided to shoot the scene "guerilla-style."

A neighboring business owner saw the unmarked van pull up and men in ski masks brandishing guns jump out and run into the store. Believing that Virani's store was being robbed, the neighbor called 911 to report that an armed robbery was taking place. The SWAT team from the Chalmette Police Department responded to the scene within minutes. Officers broke down the door to the store and entered with their weapons drawn. Training their weapons at LeBrun and Roublow, the officers ordered them to drop their weapons and warned that they would be shot if they did not comply. LeBrun, Roublow, and Virani

4

tried to explain they were filming a scene for a television show, but the SWAT officers pushed LeBrun and Roublow to the ground, handcuffed them, and arrested them. Although Roublow ultimately was released at the scene, LeBrun was transported to jail.

Immediately after the incident, the Chalmette Sheriff demanded to speak with CBS officials. Wells promptly arranged a conference call with several people, including a CBS official who was in Los Angeles. That official, Kevin Berg, was CBS's head of production for *NCIS: New Orleans*. Berg and the others on the call took responsibility for the incident and asked the Police Department not to press charges against CBS or anyone else involved in the incident.

Later that day, Wells and other CBS personnel went to the jail and picked up LeBrun. Wells and other CBS agents told LeBrun and Roublow that "the network" and "CBS" was instructing the actors not to tell anyone about what had happened. LeBrun and Roublow did not follow that instruction, and publicly told what happened to them. Since then, they have not been able to secure employment on any television production, and believe that CBS has blackballed them.

Both LeBrun and Roublow were diagnosed with post-traumatic stress disorder after the incident and continue to experience significant emotional and psychological trauma. Virani's store suffered a significant drop in business after word spread that it had been the site of an armed robbery.

The robbery scene (without the SWAT officers' entry into the store or their arrests of plaintiffs) was aired by CBS in November 2017 as part of episode 9 of season 4 of *NCIS: New Orleans*. Editing and

5

production for the episode were performed by CBS in Los Angeles, with Berg overseeing and supervising that process. The episode was viewed by approximately 8 million people when it aired, with another 3 million watching on a digital video recorder.

B.   *Procedural Background*

Plaintiffs filed the instant action in May 2020. The original complaint alleged causes of action for fraud and unjust enrichment against CBS and Bradford Kern; the complaint alleged that Kern was the showrunner and executive producer of *NCIS: New Orleans*, and that Kern and his employees and agents engaged in the production and supervision of the show from CBS facilities in Los Angeles. CBS filed a demurrer to the original complaint, arguing, among other things, that (1) the complaint failed to plead fraud with the requisite specificity; (2) section 361 applied and the fraud claim was barred by the Louisiana statute of limitations; (3) unjust enrichment is not a recognized cause of action in California; and (4) both causes of action alleged by LeBrun were barred by res judicata based upon a lawsuit he filed in Louisiana.

After CBS filed its demurrer, but before the deadline to file an opposition to it, plaintiffs filed the first amended complaint, which is the complaint at issue in this appeal. The amended complaint deleted Kern as a defendant and added several details about the events, including names of alleged agents of CBS, such as Berg.

The fraud cause of action alleged that CBS's agent Wells disclosed to plaintiffs that they would be acting out an armed robbery for an episode of *NCIS: New Orleans* but concealed from them that the scene

6

would be filmed guerilla style, without informing neighboring businesses, local authorities, or passersby about the filming of the staged robbery. The complaint alleged that the concealed facts were material because they created a significant risk of harm to plaintiffs, and plaintiffs would not have agreed to participate in the filming had they been aware of the true facts. The cause of action alleged that Wells and CBS's agents intentionally failed to disclose the true facts and prevented plaintiffs from discovering them, and that plaintiffs were injured physically, emotionally, and/or economically as a result of the fraudulent conduct. Finally, the complaint alleged that CBS, through Berg, ratified the fraudulent conduct in Los Angeles by (1) speaking with the local sheriff after the incident to persuade him not to prosecute; (2) rewarding and failing to punish or discipline Wells or any of CBS's agents involving in the incident; (3) making, approving, and ratifying the decision to use the fraudulently-obtained footage; (4) supervising and overseeing production, editing, and distribution of the episode containing that footage; and (5) receiving compensation for production of the episode and distributing rewards and bonuses to individuals who participated in the fraudulent conduct.

The unjust enrichment cause of action alleged that CBS "unjustly profited from and enriched themselves [*sic*] based on the fraudulent and deceptive conduct set forth herein, and on the harms to Plaintiffs set forth herein." It alleged that CBS "knew beforehand and/or learned soon after" the incident about the actions, deceptions, concealments, and reckless indifference to plaintiffs' safety committed by Wells and CBS's agents, and ratified, supported, adopted, and rewarded that

7

conduct by including the robbery sequence in an episode of *NCIS: New Orleans*. It alleged that CBS profited from the advertising and syndication revenue generated by that episode. The complaint then summed up the cause of action as follows: "In short, CBS profited by wrongfully and illegally putting Plaintiffs at grave risk."

In its prayer for relief, the complaint asked for (1) compensatory and general damages; (2) special damages; (3) punitive damages; (4) pre- and post-judgment interest; (5) costs; (6) attorney fees under section 1021.5; and (7) "such other and further relief as the Court deems just and proper." It did not ask for restitution or disgorgement of profits.

CBS filed a demurrer to the amended complaint, again arguing that (1) section 361 applied and the fraud claim was barred by the Louisiana statute of limitations; (2) unjust enrichment is not a recognized cause of action in California; and (3) both causes of action alleged by LeBrun were barred by res judicata. Arguing that plaintiffs had been given an opportunity to amend their complaint to state a valid cause of action and had failed to do so, CBS asked the court to sustain the demurrer without leave to amend.

Plaintiffs argued in opposition to the demurrer that (1) CBS's conduct in Los Angeles ratified the fraud and made CBS liable in California, therefore section 361 did not apply; (2) unjust enrichment is a valid equitable claim under California law; and (3) LeBrun's fraud and unjust enrichment claims were not precluded because those issues were not actually litigated and necessarily decided in his Louisiana lawsuit. Although in their one-sentence conclusion to their opposition

8

plaintiffs asked the court to grant them leave to amend in the event the court sustained the demurrer, they gave no indication of how they might amend the complaint.

At the hearing on the demurrer, the trial court announced its tentative decision was to sustain the demurrer without leave to amend as to all three plaintiffs on statute of limitations grounds, and, additionally as to LeBrun on res judicata grounds. The court explained that the facts alleged establish that the cause of action—i.e., the fraud—took place entirely in Louisiana. The court noted that the only conduct that allegedly took place in California (which counsel for plaintiffs agreed took place only "after the fact") served only to potentially expand the universe of defendants if the lawsuit was otherwise viable. Therefore the court tentatively found that the causes of action arose in Louisiana, and under section 361 the lawsuit was barred by the Louisiana statute of limitations.

During the arguments of counsel, the court asked whether plaintiffs could allege a viable cause of action based upon CBS's alleged post-fraud conduct. In response, plaintiffs' counsel stated plaintiffs could "amend to add with more specificity allegations of post[-fraud] conduct, direct action by CBS in Los Angeles blackballing these individuals or preventing them from getting work [as actors]." However, counsel insisted that that conduct was still part of "a continuing course of . . . fraudulent conduct." The court took the matter under submission and issued a written order later that day.

With respect to the fraud cause of action, the court found that "[t]he wrong for which Plaintiffs are suing (the fraud and their

subsequent arrest) occurred in Louisiana in October of 2017." The court rejected plaintiffs' assertion that CBS's alleged ratification of the fraud affects the section 361 analysis. Therefore, it found that the cause of action arose in Louisiana and section 361 applied. Since it was undisputed that the applicable Louisiana statute of limitations is a one-year statute, plaintiffs' claim, filed in May 2020, was time-barred. The court therefore sustained the demurrer to the fraud cause of action without leave to amend.

As to the unjust enrichment claim, the court rejected CBS's argument that unjust enrichment is not a valid cause of action. Nevertheless, it sustained without leave to amend the demurrer to that claim, finding that "unjust enrichment is not the type of theory that properly applies to facts like these." The court observed that unjust enrichment applies where plaintiffs have conferred a benefit on a defendant and it would be inequitable for defendant to retain that benefit without paying for its value. But the court noted that the benefit CBS received in this case was the acting work of LeBrun and Roublow and the use of Virani's store, for which plaintiffs were paid. Therefore, the court found that plaintiffs could not allege a claim for unjust enrichment.

In addition to sustaining the demurrer as to all plaintiffs, the trial court also sustained the demurrer as to both causes of action against LeBrun on res judicata grounds based upon a lawsuit he filed in Louisiana against CBS and others that was premised on the same facts and was dismissed on summary judgment.

10

Finally, the trial court addressed plaintiffs' request for leave to amend. The court observed that when plaintiffs were asked how they might amend the complaint to allege viable causes of action, they stated only that they could allege facts with more particularity and "did not offer to the court any new legal theory which could be based on post-incident allegations. They simply argued that post-incident allegations showed ratification of the original fraud." Therefore, the court concluded it "has no basis to believe that a viable claim could be stated here and will not grant leave to amend."

The trial court entered a judgment of dismissal with prejudice, from which plaintiffs timely filed a notice of appeal.

## DISCUSSION

Plaintiffs make the same arguments on appeal as they made in the trial court. They contend that (1) section 361 does not apply to their claims against CBS because those claims are based upon the ratification conduct that took place in Los Angeles; (2) their unjust enrichment claim is a valid equitable claim that is separate from their fraud claim; and (3) LeBrun's claims are not precluded by res judicata because the claims he alleges here were not litigated or adjudicated in his Louisiana lawsuit. We address the first two arguments below; we need not address plaintiffs' third argument because we conclude the trial court correctly sustained the demurrer as to both causes of action and all plaintiffs.

11

A.    *Standard of Review*

On review of a judgment of dismissal following the sustaining of a demurrer, "our standard of review is clear: '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126.) "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.)

B.    *Applicability of Section 361*

By its express language, section 361 applies (with exceptions not applicable here) "[w]hen a cause of action has arisen in another State." Thus, the question presented here is: Where did plaintiffs' causes of action arise?

Plaintiffs argue that their claims arose in California because they are based upon CBS's conduct in California, which ratified the fraudulent conduct that took place in Louisiana. They contend that this ratification created separate and independent tort liability in California. From this premise, they reason that the ratification constituted a separate tort, and that tort arose in California, not Louisiana. Plaintiffs' reasoning is faulty.

We agree that the conduct plaintiffs allege took place in California could constitute ratification by CBS of the alleged fraudulent conduct in Louisiana. (See, e.g., *StreetScenes v. ITC Entertainment Group, Inc.* (2002) 103 Cal.App.4th 233, 242 [affirming jury finding that a movie production company that failed to repudiate the fraudulent conduct of its agent ratified the wrongful conduct].) We also agree that ratification of a wrongful act creates tort liability in the ratifier for that wrongful act. (*Ibid.*) Further, we agree that a person who engages in conduct in California to ratify the fraudulent conduct by an agent in a different state may be sued in California for damages resulting from that fraud (*ibid.*), unless, of course, the claim is time-barred in the jurisdiction in which the cause of action arose.

Where plaintiffs' argument falters is their assertion that the ratification of fraudulent conduct by another constitutes a separate and independent tort. Plaintiffs rely on *PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368 (*PMC*) for this assertion. But *PMC* does not stand for this proposition. *PMC* simply held that an officer or director of a corporation could be held personally liable for intentional torts based upon the corporation's founders' misappropriation of trade secrets if the

officer or director purchased or invested in the corporation and took control of its operation with knowledge, or reason to know, of the wrongful conduct. (*Id.* at p. 1372.) To be sure, the court in *PMC* also held that the liability of the officers and directors in that case was not vicarious and was instead premised on their own tortious conduct. (*Id.* at p. 1389.) But that part of the court's holding was not based upon a ratification theory. Instead, it was based upon the law governing misappropriation of trade secrets. As the *PMC* court explained, under the Uniform Trade Secrets Act, misappropriation includes the "'use of a trade secret of another . . . by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [d]erived from or through a person who had utilized improper means to acquire it; . . . or . . . [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.'" (*Id.* at p. 1382, quoting Civ. Code, § 3426.1, subd. (b), italics omitted.) Thus, even though the officers and directors at issue in *PMC* had not participated in the initial misappropriation, they nevertheless participated, with knowledge, in the continuing use of the misappropriated trade secrets and therefore engaged in separate acts of misappropriation under trade secret law.

Contrary to plaintiffs' suggestion, the *PMC* court did not hold that any defendant who ratifies the wrongful conduct of another commits a separate and independent tort. Instead, the principle of ratification merely holds the ratifying party liable for the tort committed by another party. No new tort is committed. This is because "[r]atification is an agency doctrine. 'Ratification is the voluntary election by a person to

14

adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him.'" (*City of Brentwood v. Department of Finance* (2020) 54 Cal.App.5th 418, 436.) As the leading treatise on California law explains, "[a]n agent, at the time he or she does an act, may be without authority, actual or ostensible; but the act may be rendered valid and binding on the principal, as of the time the unauthorized act was done, if the principal ratifies and thus gives effect to it." (3 Witkin, Summary of Cal. Law (11th ed. 2017) Agency and Employment, § 149, pp. 203–204.)

In this case, the acts for which plaintiffs seek damages are the fraudulent misrepresentations and omissions made by Wells. Those acts occurred in Louisiana, to residents of Louisiana, resulting in injuries sustained in Louisiana. CBS's alleged ratification simply rendered CBS liable for Wells' acts; it was not independently wrongful and did not cause any separate injuries. That the ratification took place in California is irrelevant to determining where the causes of action arose. They arose in Louisiana. As such, section 361 applies.

Since plaintiffs do not dispute that under Louisiana law the statute of limitations for fraud claims is one year and their complaint was filed almost three years after the fraud took place, we conclude the trial court did not err in sustaining the demurrer to plaintiffs' fraud claim.

15

C.      *Unjust Enrichment Cause of Action*

Plaintiffs contend the trial court erred by sustaining CBS's demurrer to the unjust enrichment cause of action on the ground that unjust enrichment is not a cause of action but is instead a remedy. They misunderstand the court's ruling. In fact, the trial court *rejected* that ground, which was asserted by CBS in its demurrer, stating: "[CBS] challenges this claim on the grounds that unjust enrichment is not a cause of action. *That is incorrect.*" (Italics added.) Instead, the court found that under the facts alleged by plaintiffs, the equitable doctrine of unjust enrichment did not apply.

The court explained, "'[t]he doctrine applies where plaintiffs, having no enforceable contract, nevertheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances which make it inequitable for the defendant to retain the benefit without paying for its value.'" (Quoting *Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938 (*Hernandez*).) The court found that the benefit conferred on CBS by plaintiffs was their acting work and the use of Virani's store, and that CBS paid for that benefit. Therefore, the court concluded there was no unjust enrichment.

Plaintiffs assert a more expansive application of the unjust enrichment doctrine, essentially arguing it applies and can be alleged as a separate and independent cause of action whenever a party profits from a wrongful act against another. In making this assertion, plaintiffs rely on passages from two cases, without taking into account the context in which they arose. In both of those cases, *American*

16

*Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451 (*American Master Lease*) and *Hernandez, supra*, 180 Cal.App.4th 932, the courts addressed the doctrine of unjust enrichment in discussing the remedy for a validly pleaded cause of action.

In *American Master Lease*, the plaintiff (a corporation that invested in real estate) alleged that the defendant (a venture capital firm) had aided and abetted the breach of fiduciary duty by managers of the corporation. (*American Master Lease, supra*, 225 Cal.App.4th at p. 1458.) The breach occurred when, after the controlling member of the plaintiff rejected the defendant's investment proposal, two of the plaintiff's managers formed a separate corporation with the defendant venture capital firm as a co-owner, to operate a real estate investment business using the plaintiff's proprietary business method. (*Id.* at pp. 1462–1463.) The plaintiff filed a lawsuit against the defendant alleging causes of action for aiding and abetting a breach of fiduciary duty, interference with contract, unfair competition, and unjust enrichment. (*Id.* at p. 1467.) The trial court sustained without leave to amend the demurrer to the causes of action for unjust enrichment and unfair competition, and the case went to trial on the aiding and abetting breach of fiduciary duty and interference with contract claims. (*Id.* at pp. 1467–1468.) At trial, the plaintiff presented evidence to show the value of the benefit the defendant received from the sale of stock in the newly formed corporation, and the jury was instructed on the elements of unjust enrichment, restitution, disgorgement, and constructive trust. (*Id.* at pp. 1468–1469.) The jury found in favor of the defendant on the

17

aiding and abetting claim, and awarded the plaintiff "damages" in the amount the defendant had received from the sale of stock. (*Id.* at p. 1471.)

On appeal, the defendant contended that the equitable remedies of unjust enrichment, disgorgement, and constructive trust were not available for aiding and abetting a breach of fiduciary duty. (*American Master Lease, supra*, 225 Cal.App.4th at p. 1481.) The appellate court disagreed. In discussing the remedy of disgorgement, the court observed that "[t]here are two types of disgorgement: restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." (*Id.* at p. 1482.) It explained that "'[w]here "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust . . . the defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched." [Citation.]'" (*Id.* at p. 1482.) The court continued, "'"[i]t is not essential that money be paid directly to the recipient by the party seeking restitution. . . ."'" [Citations.] The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again.'" (*Ibid.*)

In the present case, plaintiffs rely upon the last quoted sentence to argue that they have alleged a valid cause of action for unjust

18

enrichment independent of their fraud claim because they alleged that CBS profited from its conscious disregard of their rights. But as is clear from the context in which the *American Master Lease* court made that statement, the duty to disgorge such profits arises only as a remedy for a validly asserted cause of action. Moreover, plaintiffs' own complaint belies their assertion that their unjust enrichment cause of action is independent of their fraud claim, inasmuch as they allege in the second paragraph of that cause of action: "As set forth herein, CBS unjustly profited from and enriched themselves based on the fraudulent and deceptive conduct set forth herein, and on the harms to Plaintiffs set forth herein." In other words, plaintiffs seek the remedy of nonrestitutionary disgorgement based upon their fraud claim, which as discussed above, is barred under section 361.

The other case plaintiffs rely upon, *Hernandez*, *supra*, 180 Cal.App.4th 932, similarly does not assist them. In that case, the trial court had dismissed the plaintiffs' breach of contract claim on the ground that their complaint did not allege a breach of any of the terms in the written contract, although the court observed that the defendants "'might be liable for a conversion or trespass, or on a theory of unjust enrichment, but not a breach of contract.'" (*Id.* at p. 937.) The plaintiffs then filed a new lawsuit alleging claims for unjust enrichment and conversion, but that lawsuit "ran afoul of the doctrines of merger and bar." (*Ibid.*) The plaintiffs then appealed from the dismissal of their original lawsuit. (*Ibid.*)

The appellate court held that the trial court in the original lawsuit "focused unduly on labels" in dismissing the breach of contract cause of

action. (*Hernandez*, *supra*, 180 Cal.App.4th at p. 938.) It held that the plaintiffs' "detailed cause of action for breach of contract fully raised all the facts and circumstances in which equity could contemplate a quasi-contractual remedy to prevent [the defendants] from being unjustly enriched at the expense of the [plaintiffs]." (*Id.* at p. 939.) It is in this context that the court included the passage upon which plaintiffs rely in this case: "'The spirit behind the law of unjust enrichment is to apply the law "outside of the box" and fill in the cracks where common civil law and statutes fail to achieve "justice."'" (*Ibid.*)

In the present case, the common civil law and statutes already provided a method to achieve justice for the wrongs allegedly committed: a cause of action for fraud. Plaintiffs' inability to maintain that cause of action was not due to the absence of law to support it but rather to their failure to timely assert it. In such a case, "justice" does not require the application of the unjust enrichment doctrine. Therefore, we affirm the trial court's ruling sustaining CBS's demurrer to the unjust enrichment cause of action.

D.    *Denial of Leave to Amend*

As noted, the trial court denied plaintiffs leave to amend their complaint, finding that they failed to demonstrate how they could amend the complaint to allege valid causes of action. Plaintiffs do not address in their appellate briefs the court's denial of leave to amend and do not suggest how they could amend the complaint.

As noted, although we are required to decide "'whether there is a reasonable possibility that the defect [in the complaint] can be cured by

20

amendment[,] . . . [t]he burden of proving such reasonable possibility is squarely on the plaintiff" (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126) by "show[ing] in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Cooper v. Leslie Salt Co.*, *supra*, 70 Cal.2d at p. 636.) The plaintiffs in this case have not done so. Accordingly, we affirm the trial court's denial of leave to amend.

## DISPOSITION

The judgment is affirmed. CBS shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.


21